113 F.3d 1244
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Bernardo RAMIREZ-CRUZ, Defendant-Appellant.
 No. 96-10038.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 11, 1997.
Decided April 29, 1997.
As Amended June 3, 1997.
 
 Before: HUG, Chief Judge; THOMPSON and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 A jury found Bernardo Ramirez-Cruz guilty on two counts of aggravated sexual abuse, in violation of 18 U.S.C. § 2241(c). The counts involved the molestation of a six-year old Yaqui Indian girl. Ramirez-Cruz appeals from his conviction and sentence. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.
 
 
 3
 A. Exclusion of Ramirez-Cruz's Expert Testimony
 
 
 4
 Ramirez-Cruz sought to introduce testimony by Doctor Carol Locust, an alleged expert on Yaqui culture. Doctor Locust would have testified the Yaqui Indians have a "matrilineal power structure." Ramirez-Cruz contends this testimony would have corroborated his defense theory that Baltazar required the Yaqui female witnesses to fabricate the abuse allegations against him.
 
 
 5
 The district court excluded the expert testimony under Federal Rule of Evidence 403. We review for an abuse of discretion. See United States v. Spencer, 1 F.3d 742, 744 (9th Cir.1992).
 
 
 6
 The district court did not abuse its discretion. The testimony could have confused the jury or wasted time because the testimony would have addressed only generally the power structure of the Yaqui culture. The testimony was not directly tied to the witnesses in Ramirez-Cruz's case. Cf. United States v. Hoac, 990 F.2d 1099, 1103 (9th Cir.1993) (concluding expert testimony properly excluded under Rule 403 when expert had little familiarity with witness), cert. denied, 510 U.S. 1120 (1994).
 
 
 7
 Further, the district court allowed Ramirez-Cruz to question the witnesses on the matrilineal structure.
 
 
 8
 B. Admission of Ramirez-Cruz's Prior Bad Acts
 
 
 9
 Ramirez-Cruz argues the district court erred by admitting testimony by two other young girls that Ramirez-Cruz had sexually abused them. The district court admitted the evidence under Federal Rule of Evidence 404(b).[1] We review for an abuse of discretion, United States v. Santiago, 46 F.3d 885, 888 (9th Cir.), cert. denied, 115 S.Ct. 2617 (1995), and conclude the district court did not abuse its discretion.
 
 
 10
 The evidence was relevant to prove intent, see United States v. Jackson, 84 F.3d 1154, 1159 (9th Cir.), cert. denied, 117 S.Ct. 445 (1996), and to prove Ramirez-Cruz's knowledge or awareness of his actions. The other acts were not too remote in time. See United States v. Hadley, 918 F.2d 848, 851 (9th Cir.1990). Further, the other acts are sufficiently similar to the charged offense. The other acts involved similar abuses of six-year old girls, usually when they were left alone with Ramirez-Cruz.
 
 
 11
 Also, the risk of unfair prejudice did not outweigh the probative value of the evidence. The district court gave the jury a limiting instruction before the two girls testified. This instruction limited any prejudicial effect. See id. at 852.
 
 
 12
 C. Exclusion of Conviction and Sentence of Edward Quihuis
 
 
 13
 The district court did not abuse its discretion by excluding evidence that Edward Quihuis was convicted of child molestation and received a five-year prison sentence. The district court determined the prejudicial effect of this proffered evidence outweighed any probative value. See United States v. Spencer, 1 F.3d 742, 744 (9th Cir.1992). We agree. The admission of Quihuis's conviction could have confused the jury and wasted time, and the district court allowed Ramirez-Cruz to question the witnesses about whether they were aware of the seriousness of their allegations and of the severe consequences for Ramirez-Cruz.
 
 
 14
 D. Questioning Alipas About Alleged Drug Use
 
 
 15
 Ramirez-Cruz argues the prosecution committed misconduct by asking Alipas about drug use. The prosecution represented to the district court that at lest two witnesses could testify that Alipas did use controlled substances during the relevant time period. There is no indication that the prosecution made this statement in bad faith or otherwise did not have a good faith belief that a factual basis existed for the allegation. See United States v. Davenport, 753 F.2d 1460, 1463-64 (9th Cir.1985).
 
 
 16
 E. Refusal to Give Ramirez-Cruz's Suggestibility Instruction
 
 
 17
 The district court refused to give Ramirez-Cruz's proposed instruction on the suggestibility of children. We review for an abuse of discretion and conclude the district court did not abuse its discretion. See People of Territory of Guam v. McGravey, 14 F.3d 1344, 1348 (9th Cir.1994).
 
 
 18
 In McGravey, we concluded the suggestibility instruction is not mandatory, reasoning "[s]uch courtroom weapons as cross-examination, contradictory evidence, evidence that a witness has been influenced by others, and argument are the time-honored methods of educating a jury on issues of credibility." Id. at 1349.
 
 
 19
 Here, as in McGravey, the instruction would have served only to cast doubt upon Girl S.'s testimony and would not have helped the jury in assessing the evidence. Also, the district court gave the jury a general instruction on determining a witness's credibility which sufficiently instructed the jury on how to assess a witness's credibility.
 
 F. Sentencing
 
 20
 The district court increased Ramirez-Cruz's base offense level by four points, pursuant to Sentencing Guideline Section 2A3.1(b)(1), because the court found he had used force during the offenses. The district court also increased his base offense level, pursuant to Section 2A3.1(b)(3)(A), because the court found Girl S. was in Ramirez-Cruz's custody and care.
 
 
 21
 Ramirez-Cruz argues he did not use force during the offenses and Girl S. was not in his custody or care. We review for clear error "a district court's factual findings in connection with sentencing...." United States v. Green, 1997 WL 33535, at * 1 (9th Cir.1997). The district court's findings of force and care and custody are not clearly erroneous.
 
 
 22
 With regard to the use of force, Girl S. testified that Ramirez-Cruz restrained her on the couch, she tried to get away, he would not let go of her, he put her on his shoulders, "he started wrestling," and digitally penetrated her vagina. Her testimony indicates Ramirez-Cruz used physical restraint and force against her before and apart from the physical force necessary to commit the sexual act. "The force requirement is met when the sexual contact resulted from a restraint upon the other person that was sufficient that the other person could not escape the sexual contact." United States v. Fulton, 987 F.2d 631, 633 (9th Cir.1993). The district court's finding of force is not clearly erroneous.
 
 
 23
 Under Section 2A3.1(b)(3), a two-point increase is appropriate if Girl S. was "in the custody, care, or supervisory control" of Ramirez-Cruz. This subsection is "intended to have broad application and is to be applied whenever the victim is entrusted to the defendant, whether temporarily or permanently." USSG § 2A3.1(b)(3), comment. (n. 3). Ramirez-Cruz lived with Girl S.'s family, was left alone with Girl S. while her mother was at work, cooked for the children, drove them to school, drove them to the dentist, and "did everything" around the house while Girl S.'s mother was at work. The district court found that Ramirez-Cruz "attempted to ingratiate himself with these individuals so he would have the opportunity to have this type of contact with the small children." The district court's findings of care and custody is not clearly erroneous.
 
 
 24
 AFFIRMED.
 
 
 25
 KLEINFELD, Circuit Judge, concurring in part and dissenting in part:
 
 
 26
 I concur in all but Part F of the disposition on sentencing, from which I respectfully dissent.
 
 
 27
 Six levels were added to Ramirez-Cruz's potential sentence for use of force and victim in his care and custody. This increased his sentence by 10 to 13 years. I think these two adjustments were mistaken.
 
 
 28
 As to force, the word in isolation could mean anything from mere touching to extreme violence, but it is not in isolation. The guidelines give examples of the kind of force meriting the four level adjustment: "threatening or placing the victim in fear that any person will be subject to death, serious bodily injury, or kidnapping; ... rendering the victim unconscious; or ... administering by force or threat of force, or without the knowledge or permission of the victim, a drug, intoxicant, or other similar substance and thereby substantially impairing the ability of the victim to apprise or control conduct." U.S.S.G. § 2A3.1(b)(1), application note 2.
 
 
 29
 Here is the testimony on the force Ramirez-Cruz used:
 
 
 30
 I was going to do my [back]-flip [off the sofa] and he came and caught my leg and I tried to let go and he wouldn't let go of me. ... He put me up on his shoulders and touched me and I said, "Junior [her brother], help!" And he started wrestling and he picked me up ... by my waist. ... I said "Put me down, Bernie," so he put me down.
 
 
 31
 Q. Now you said that he started touching you when you were doing flips?
 
 
 32
 Yes. ... On my private. ... he put his hands in my ... underwear. [inside of me]. ... I pulled his hand out. ... He tried to make me touch his, but I pulled my hand out.
 
 
 33
 Were it not for the sexual aspect, putting his finger in the victim's vagina, and trying to make the victim touch his penis, the level of force would be what is ordinarily termed "horseplay" rather than violence. No one would call it force if a family friend who was not a sex criminal grabbed a child doing backflips off the sofa and put her on his shoulders while she yelled to let her go. Words in a statute are ordinarily understood as restrained in meaning by the principles of ejusdem generis and noscitur a sociis. Because the violence here was nothing like death threats, drugging the victim, kidnapping, knocking the victim out, brandishing a dangerous weapon, and the other examples in the application note, it could not properly be treated as "force" for purposes of the enhancement.
 
 
 34
 The two level enhancement applies "[i]f the victim was in the custody, care, or supervisory control of the defendant." The government established that the victim was sometimes left with the defendant as her baby-sitter, but did not show that he was baby-sitting at the time of these offenses. I read "was" in the guideline to mean "was at the time of the offense." This reading of "was" is suggested by Application Note 3--the Note says "whenever" the victim is left with a baby-sitter. At the time of one count in the indictment the victim's brother was there, and on the other an adult woman was in the house taking a nap. There does not seem to be a record establishing that Ramirez-Cruz was baby-sitting either time, though he did at other times, and appears from the presentence report to have molested the victim on at least one such uncharged occasion. But the uncharged conduct does not appear to have been the basis for the adjustment. The government's theory was rather that Ramirez-Cruz had generally become part of the family and shared some responsibilities for the children some of the time. That is not enough for the enhancement.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Ramirez-Cruz argues Federal Rules of Evidence 413 and 414 are unconstitutional. Because the district court admitted the prior act evidence under Rule 404(b) and not under Rules 413 and 414, the constitutionality of these rules is not before us